Morning, your honors. My name is Michael Donahoe. I work for the Federal Defenders. I work in the Helena branch in Montana. I was appointed to represent Mr. Dare, and we're here on a claim that the United States v. Jordan should be applied to the statutory sentence. I'm sure that your honors are familiar with this record. The District Judge made alternative findings and decided that under a clear and convincing standard of proof, it was not shown or demonstrated that the firearm was discharged. We want that ruling. The fundamental issue is a legal issue here, is it not, that which standard applies, either preponderance or clear and convincing? Correct, your honor. It is. Tell me why you think it should not be preponderance. Because we fall within the terms of United States v. Jordan. There is a substantial bump or rise in the statutory minimum sentence from five-year possession up to and including ten years for the discharge. It's a 50 percent increase in the sentence. The reasoning of Jordan certainly applies. The logic of Jordan certainly applies. The government tries to make a distinction here and says, well, Jordan is a guideline case, and it doesn't apply here. And actually, I credit the government for arguing the case in that style, because I think it sharpens the issue here. There is no distinction to draw between this sentence, although it was meted out under the terms of the statute, and a guideline sentence. They're interchangeable things. They're functional equivalents. 2G2.4 or 2K2.4 requires that the mandatory minimum sentence be the applicable sentence for the gun count. 5G1.3, if we could imagine a scenario under the guidelines where the sentence, the guideline sentence might have been lower and the mandatory minimum sentence had been higher, the guidelines would require that the mandatory minimum sentence be the sentence. So if that is the case, there's absolutely no reason why one should not extend the statute. Well, now, in this situation, the finding does not deal with changing the guideline range. It relates specifically and only to the minimum. Isn't that right? There is no – I guess my precise answer to the question would be that there is no actual guideline range under 2K2.4, except to the extent that it draws in or incorporates by reference the mandatory minimum sentence. So I think that's what I'm saying. It interchangeably sets a minimum, and that's all it does. Correct. Okay. I agree with that. So why shouldn't preponderance – It nonetheless functions as a guideline. And I think that if you're making the determination, Your Honor, between starting at the floor of 5 and going to the ceiling of 10, based on the court's findings – Judge Malone was very troubled by this case, and I think for good reason. The record displays his dissatisfaction, but he nonetheless carried out what he saw his constitutional duty to be. Now, you conceded that there's brandishing here. Did I understand that correctly? Well, I think that there's a brandish in terms of actual bringing the firearm out. That's not disputed. It was never disputed. Did you argue that the brandishing had absolutely no relation whatsoever to the drug offense? No, I did not. But we did – Could you? Well, I don't know that I could have, Your Honor. Seriously, I think that's a fair question. And I don't know that I would have gone that way. I think as evidenced by the record before the Court, we were pretty up front in how we handled this case. We recognized the applicability of Harris. We saw maybe the foolishness of trying the case to a jury. That could have put us in a worse position maybe. And we were willing to try the sentencing factors to the Court. But I do not want to leave that brandishing issue that if we would go back down – and I pray that we are successful today – that there is still the issue of the intoxication vis-à-vis the brandish. And I don't know that we ever reached that question. The sentencing as it developed and evolved on this record dealt almost exclusively with that discharge. Well, if we look at this record and conclude that you conceded brandishing because actually that was your request to the district court. Your request to the district court was sentence me to seven years, right? That's true. And now – and if we start with that, then going to 10 is not as disproportionate, if you will, or dramatic as going from 5 to 10. And that cuts into your Harris argument, doesn't it? Well, I think it does. And that's a way to look at that. And maybe it's a fair way to look at it. But I'm going to ask the Court to think about people in our position and exclusively the defense position in a situation like this. These issues were framed – I think they were framed nicely. I think that they were brought to the Court's attention. And I think circumstances alter cases, Your Honor. And what happened here was that we tried the discharge. The brandish took a second seat. And the intoxication evidence – and I tell you this frankly and candidly – we did not recognize maybe the strength of it, even from the defense perspective. The witnesses were good. Judge Malloy was impressed with it. And I think that if we had been trying the brandish to the Court, it could have been different. And the fact is, is that no brandish sentence was meted out. The fact is, is that the record shows that Judge Malloy went ahead and made the finding based on a preponderance that the discharge was meted out. Now, this is pre-Booker-Fan-Fan. Does that change anything? I want it to. I do. I was before Judge Lovell, the Honorable Judge Lovell, last week, and he said, Michael, you must think that this is the lottery, these decisions, Booker-Fan-Fan. And – but, you know, I've been around too long, Your Honor, to think that – Why doesn't Booker-Fan-Fan apply here? Well, I think that maybe in terms of the reasonableness argument, I don't think Booker-Fan-Fan overrules Harris. I don't think I can make that argument. If the Court sees it differently, I'm certainly willing to be wrong. I'm not sure I doubt that. Booker-Fan-Fan didn't mention Harris? Well, they – in my memory, they do not mention Harris. And Harris is – that's not to say that this issue – I think there's some dissatisfied people at the Supreme Court with the Harris analysis. I tried to point that out in the reply brief. And I – maybe in terms of evolution, depending upon how Congress reacts to the Booker-Fan-Fan paradigm, maybe the mandatory minimum sentencing has become attracted to the legislative arm of the government, and then the Supreme Court takes another look at those, but I don't think we're there yet. Would you like to reserve? Yes, I would, Your Honor. Can I do so? We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Paulette Stewart. I'm an assistant United States attorney for the District of Montana. I'm in the Helena office for the appellee. The district court in this case applied the correct standard of proof of by preponderance of the evidence at the sentencing hearing when the district court sentenced the defendant to 10 years' imprisonment for discharging the firearm in furtherance of the drug trafficking crime. When a person violates Section 924C, Congress has mandated how that person should be punished according to the actions of the defendant. It's 5 years for possession, 7 years for brandishing, and 10 years for the discharge. The Supreme Court in Harris held that discharging or, I'm sorry, that brandish and discharge are sentencing factors and not actually elements of the crime, which is why we had this case basically tried before the judge for the sentencing hearing. All right. Now, does that trigger Booker and FanFan? I don't believe it does, Your Honor. And basically what this is is Booker and FanFan affect the sentencing guidelines. Basically now makes them in 5 years. So you're saying this is not a guidelines issue. Is that what you're saying? I don't believe it is because we're dealing with mandatory minimums. In the 924C count, there wasn't even a guideline or a proposed guideline range initiated because this is a mandatory minimum case. It's either 60 months, 84 months, or 120 months, depending upon the findings by the district court. Well, okay. But we're still faced with the question, are we not, even though Harris was not mentioned in these more recent cases, as to whether or not it's still the law. Are we not? Or do we have to follow it, irrespective of what we think the court might have done or should do with it in the future? You know, I guess I don't think that the status of the law is to the point where we can second-guess Harris at this point. I don't think that we've been given that much latitude by the Supreme Court at this point. Well, now, Harris makes a clear distinction between upping the maximum as opposed to upping the minimum, right? Yes, sir. Yes, Your Honor. And if it increases the maximum, it has to be jury-found. Yes, Your Honor. If it increases the minimum, it can be court-found. Yes, Your Honor. Now, I pose this question to you. Under this indictment, if the defendant had simply pled guilty without resorting to suggested sentencing factors at all, does anybody know what the maximum would have been? As far as I can tell, Your Honor, the maximum is life. I mean, the way that the maximum is life? Well, to a 924C count. Okay. So was this defendant told when he pled guilty that the maximum sentence here could be life in prison? I believe the face of the indictment reads not less than 5 years for possession, not less than 7 years for brandish, not less than 10 years for ---- No, that's what the statute says, all right? But the statute never tells us about a maximum until it gets to a machine gun, right? Correct. Now, if you do not use a machine gun, how do you know what the maximum is? Would a sentence of 11 years have been illegal here? I don't think so, Your Honor. I think ---- Well, how do we know it's within the maximum? Because there's no machine gun involved, and the statute doesn't tell us anything about maximum other than in machine gun cases. The point I'm groping for is that the Court in Harris talked about pure minimums, but every one of these minimums seems to simultaneously increase the maximum. I can't answer that, Your Honor. Do you see the problem? I do see the problem, Your Honor. So we do not know what the maximum sentence in this case would be until we know that sentencing factor that says he either used a machine gun or not or either used or discharged a weapon or not or either brandished a weapon or not. We don't know what the maximum is until somebody determines a sentencing factor. Yes, Your Honor. That's contrary to ---- Now, Harris talks about if it increases the maximum, it's bad. True? Booker, I think, does. Harris talks about pure minimums. Well, Harris acknowledges that. Could you speak up a little bit more closer to the microphone? Yes, Your Honor. I apologize. Now, how do we reconcile this case, then, with the prohibition against increasing the maximum sentence without a jury finding? I'm not sure the best way to answer that, Your Honor, other than one of the things that we did look at, or I guess we've argued to the court, in relation to the sentencing guidelines, because that probably is one of our best determinants, are the Jordan and the Valencia factors as to whether or not a guideline sentence is extremely disproportionate because we didn't have anything else to base it on. But I'm just talking about the difficulty with this burden of proof. Now, we have it in the hands of the court. The question is whether or not it should be by preponderance or beyond a reasonable doubt. And I'm having a struggle here figuring out how this finding did not increase the maximum sentence allowable under the law. I can't answer that, Your Honor. Well, you assume that an 11-year sentence would have been legal. Yes, Your Honor. Would have been within the maximum. Yes, Your Honor. Because it would have been within life. Yes, Your Honor. But we don't know that life applies until the guy is found to be using a machine gun, right? Yes, Your Honor. Okay. You understand my dilemma here. I do understand your dilemma, Your Honor. And how we can come out of this with anything rational, I've yet to try to figure out. Got any ideas? You know, I don't, Your Honor, other than I've never seen a maximum sentence for this statute. I know we obviously we have the standard minimum, but I've never seen a maximum sentence either, Your Honor. Okay. Okay. And there's no, okay, we have to read the statute the same way. I don't see a maximum until you get to life and a machine gun. Okay. And I think that's why in our arguments, in our briefs, we do look to the sentence or did look to the sentencing guidelines in arguing between a preponderance of the evidence, which is what the judge used in this case to find the discharge and the clear and convincing standard that the defendant is arguing for. But I still think it is, it's my position or our position that the sentencing judge was correct in using the preponderance of the evidence standard because of the Jordan factors. And the, I guess the main factor in my mind is, was the sentence enhanced? Was it more than double of what an otherwise relatively short sentence would have been? And the answer is no. I mean, in this case, basically the judge was deciding. It wasn't more than double, it was just exactly double. Was that from five to 10? Well, five to 10 is possession. And the district court wasn't actually, nobody argued for simple possession of the firearm during the drug trafficking crime. I mean, nobody was arguing, Your Honor, please sentence the defendant to 60 months. What the judge was basically deciding between, and as Your Honor's pointed out, the defendant asked, please sentence me to brandish, which is an 84-month sentence. Eighty-four months, and the judge found the discharge, which is a 120-month sentence. There's only 36 months between those two. So we don't get to more than double. More than double would be more than 168 months in this case, Your Honors. And so as a result, we don't get to that extreme disproportionate impact. And even if it were 60 months to 120 months, then we're on the edge. Then we're at double, but we're still not actually more than double. Do you want to say anything about the issue of intent? Of the intent? Yes. Briefly, Your Honor, basically it's the government's position that voluntary intoxication does not apply to sentencing factors. It shouldn't actually even be considered. Voluntary intoxication does apply to the crime itself, the offense conduct. But in this case, the defendant pled to the charge. There wasn't – this isn't about the conviction. This is about basically related conduct. Well, there's something about possession that involves a relationship between a person and an object that has to do with consciousness at least or intent or something, and particularly the activity of discharging a weapon. Now, it has to be in relationship to the offense. It has to bear a relationship to the offense. It can't be just a random discharge, an accidental discharge, can it? That's correct, Your Honor. But discharging in and of itself is a purposeful act. Well, how do we know that unless we know the condition of the person's mind when we say it's purposeful? Well, and also, Your Honor, the defendant doesn't dispute possessing the firearm. All right. Which then, as you know from the record, he – Gets us to 5. Right. But now the discharge. The discharge, Your Honor, in this case is the walkout to the front door and the pull of the trigger. How does that further the transaction? It furthered the transaction basically through the intimidation of the two witnesses who were present and also shows his serious – Did he offer the gun to Mr. Duchennec? He did. So you take the gun and shoot him. How can a discharge after that show intimidation? But it still shows his seriousness about the fact that he didn't want the police coming to his door after these two had refused to smoke marijuana with him. Because this was all one continuous flow. This was the weighing of the marijuana, the money, the would you smoke, no. He walks back to the back room. Somebody says, I believe, with the money, grabs the shotgun, comes out, makes his statements, racks the shotgun, offers it to Duchennec and fires it out the back door. Thank you, counsel. Sorry, one more question. So this – your argument would be this shows that this is what any feds who show up are going to get. Yes, Your Honor. Thank you. Thank you, counsel. Your time has expired. Mr. Rodone, you have some reserve time. Just briefly, I would like to indicate that if we break this down into its stages, its constituent parts here, there's the arraignment. And I just don't have a memory of appearing with the man. Sometimes we don't do that. We're in different cities at the arraignment. I don't know that he was precisely advised about the potentialities of a life sentence. I know that there are cases in this circuit, and I think in others, that indicate that the upper term for a 924C charge is life imprisonment. But if you take that arraignment, the life imprisonment charge would be the upper term. Then at the change of plea, when we motion to change plea, the indication to the court is, is that we're playing to the possession, is my memory. And that the sentencing factors will be determined at the sentencing hearing, and Harris was expressly discussed during that proceeding. So at that point in time, the plea that's taken is, is that there's an actual possession under 924C, and that the necessary elements to the offense, the essential elements of the offense are admitted, but the sentencing factors will be put off to another day. Now, for strategic reasons, namely the tape and the gun coming off the wall and the two live witnesses and so on, the sentencing memoranda are styled in a way that the issue becomes one of brandish vis-à-vis discharge. But that doesn't alter the fact that as we appear for sentencing that morning, what the man stands convicted of is possessing a firearm during a drug trafficking crime. What's the guideline range for that specific crime? You know, Judge, I don't think they even calculate one under 2K2.4. If you look, I think at pages 8, 9, 10 in the pre-sentence report, you see where the calculation is done. And the drug guideline turns out, I think, to be de minimis at zero to six months. And then the gun count is talked about in terms of the mandatory minimum terms. And there's not one specified in the pre-sentence report. It just says that, I guess, it will await the district court's findings. Could a judge theoretically go above the mandatory minimum? No, I don't think, given Harris, that you could do that. I don't see how you could do that. So it's a minimum and a maximum at the same time. Right. Now, you heard my discussion with counsel and the difficulty with Harris. Yes, Your Honor. Now, you don't want that issue dumped into your case, I take it. You never made that argument that Harris somehow is going to be overruled or is bad law. Are you saying that now? Well, I'm saying that you'd rather have the case decided on the issues if you agreed, am I right? Well, I am, but I don't want to forego anything. The court is certainly far wiser than I am. And if the court sees something that I didn't see that inures to this man's benefit, I want him to have full value of that. Sometimes the litigant doesn't want the court monkeying around with their issues, if that's what I'm saying. No, Your Honor. I take no offense or umbrage at that. If the court sees something that you're tempted to do it, but you understand the struggle that we are bound to have with Harris. Yes, Your Honor. In terms of maximum minimums and so on. Yes, Your Honor. If it went back, I think that Judge Malloy could take a look at the case anew with better perspective, given everything that's transpired. Remember that this sentencing was handed or conducted in April of 04, and then we had Blakely in June and so on. So we didn't have the advantage of those opinions, and it might alter the outcome. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted for decision, and we will move to argument in Coughlin v. American Seafoods Company. Good morning, and may it please the court. My name is Scott Collins, and I'm here today for Appellant James Coughlin. I would like to reserve five minutes for rebuttal time.
judges: O'scannlain, Leavy, Bea